IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALISON MARCEAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:16-cv-0547-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.  Introduction**

The plaintiff, Alison Marceau, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), who issued a partially favorable decision on her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Ms. Marceau timely pursued and exhausted her administrative remedies[1] and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] An Administrative Law Judge issued a decision finding Plaintiff not disabled in February 2012, which the Appeals Council vacated one year later. On remand from the Appeals Council, the ALJ held another hearing and issued the partially favorable decision being appealed presently.

1

Ms. Marceau was thirty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 159, 255.) Her past work experiences include employment as a billing clerk, a data entry clerk, a call receiver, and a waitress. (Tr. at 45.) Ms. Marceau claims that she became disabled on April 5, 2008, due to idiopathic peripheral neuropathy, headaches/migraines, generalized anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), depression, and asthma. (Tr. at 33, 35-36.).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine

whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Marceau last met the insured status requirements of the Social Security Act through June 30, 2009. (Tr. at 35.)[2] He further determined that Ms. Marceau has not engaged in SGA since the alleged onset of her disability, April 5, 2008. (Tr. at 35.) According to the ALJ, prior to December 19, 2013, Plaintiff did not have a severe impairment or combination of impairments. (Tr. at 36.) However, he determined that since

---

[2] For Plaintiff's DIB claim, she thus had to show that she became disabled before June 30, 2009, when he insured status expired. 20 C.F.R. §§ 404.131(b)(1), 404.315. For additional SSI payments, she had to show that she was disabled as of January 2012, the first month she had an SSI application on file. 20 C.F.R. §§ 416.202(g), 416.305(a), 416.330, 416.335.

December 19, 2013, Plaintiff has had the following severe impairments: ADHD, major depressive disorder, social phobia, somatoform traits, and cluster B personality features. (Tr. at 42.) However, he found that these impairment neither met nor medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) With regard to Plaintiff's RFC, the ALJ found that since December 19, 2013, she could perform light work with the following additional limitations: she can sit up to six hours in an eight hour day but no more than two hours at a time, stand up to four hours in an eight hour day but no more than one hour at a time, and walk up to three hours in an eight hour day but no more than two hours at a time; she can continuously reach, handle, push, pull, feel, finger, use foot controls, or climb ramps or stairs; she can frequently climb ladders or scaffolds, balance, stoop, kneel, crouch, crawl, or operate motor vehicles; she can occasionally perform in environments of humidity, wetness, or vibration, but she should not perform in environments of temperature extremes, both hot and cold; in addition to normal workday breaks, she will need to have breaks that allow her to move away from the workstation for more than five minutes every two hours during the regular workday; she will be absent more than three days per month, and she will be off task more than twenty percent of the workday. (Tr. at 44.)

According to the ALJ, Ms. Marceau is a "younger individual," and she has "at least a high school education," as those terms are defined by the regulations. (Tr. at 45.) He determined that Plaintiff has "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." (*Id.*) The ALJ enlisted a vocational expert ("VE") in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 to use as a framework for finding that since December 19, 2013, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 45.) The ALJ concluded his findings by stating that while Plaintiff was not under a disability within the meaning of the Social Security Act at any time through June 30, 2009, the date last insured, Plaintiff became "disabled on December 19, 2013, and has continued to be disabled through the date of this decision." (Tr. at 46.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives

deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881,

883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Marceau alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ erred in finding that she had no severe impairments before December 19, 2013. Second, Plaintiff contends that the ALJ failed to fully and fairly develop the record.

### A. No Severe Impairments Prior to December 19, 2013

The ALJ must determine whether a claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). This determination comes in step two of the sequential evaluation process. An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.5121, 416.921; Social Security Rulings ("SSR") 88-28, 96-3p, and 96-4p.

Here, the ALJ determined that Plaintiff's ADHD, depression, and anxiety disorders worsened and became severe in combination with newly-formed somatoform and personality disorders as of December 19, 2013. (Tr. at 42). That is the date that Plaintiff underwent a neuropsychological examination by Dr. Randall Griffith, a consultative psychologist. The ALJ was ordered by the Appeals Council to order this consultative examination after the Appeals Council reversed his denial of benefits as to Plaintiff in 2012. Dr. Griffith found that Ms. Marceau had ADHD, major depressive disorder, anxiety and panic symptoms secondary to social anxiety, and traits and characteristics of a somatoform disorder. As a result of these conditions, Dr. Griffith opined that Ms. Marceau's difficulties with concentration and persistence would make it difficult for her to remain on task independently, her social anxiety would make it difficult for her to cope with supervisors, coworkers and the public, and that her ability to tolerate work stress would be moderately to severely reduced. (Tr. at 430-36).

Plaintiff responds that "no reasonable person could believe . . . that her disability miraculously began on the very day of the examination." (Pl.'s Br. at 6). But that is not the issue before this Court. Instead, the issue is whether substantial evidence supports the ALJ's decision that Plaintiff did not meet her burden of showing a severe impairment until Dr. Griffith's examination in December 2013.

*See Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (stating the burden of showing an impairment is "severe" rests with the claimant) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Thus, Ms. Marceau overlooks that it is her burden to establish the existence of a severe impairment when she suggests that the ALJ should have determined that her impairments became severe at an earlier point.

Plaintiff also argues that she was diagnosed with ADHD at the age of six and diagnosed with depression and started depression medications at age 12. However, the mere existence of a diagnosis of an impairment does not show if a plaintiff's ability to work is affected. *Moore,* 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Substantial evidence supports the ALJ's determination that Plaintiff's impairments were severe on December 19, 2013, but not before. For example, Plaintiff told Dr. Griffith in December 2013 that she had social anxiety, especially in crowds, which caused her to hyperventilate and cry uncontrollably. (Tr. at 43-44, 432). But even if this statement accurately described Plaintiff's condition in December 2013, the ALJ was not required to accept its accuracy regarding earlier months because Plaintiff reported engaging in numerous activities that almost assuredly involved crowds, such as: attending cosmetology school in June 2008 (tr. at 328); applying for jobs at a library and at her favorite stores, stating she was

"fully ready to get a job and working again" in January 2009 (tr. at 320); attending her mother's wedding in July 2009 (tr. at 315); going to an anime convention in Atlanta, Georgia, in September 2010 (tr. at 41, 390); helping organize the "Phoenix Festival" in August 2012 (tr. at 41, 412); planning her wedding in January 2013 for about 160 attendees (tr. at 410); getting married at a comic book and fantasy convention (tr. at 38, 41, 428); planning to attend and speak at an anime convention in March 2013 (tr. at 41, 411); and going to Disneyworld in October 2013. (Tr. at 38, 427). *See* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

Further, Plaintiff's statements and the treatment notes of her medical providers prior to December 2013 indicate that her anxiety and depression were not disabling before that time. Plaintiff stated in April 2011 that she did not have much anxiety. (Tr. at 387). In May 2012 she stated her anxiety was "ok." (Tr. at 413). Plaintiff told Dr. Griffith in December 2013 that she was depressed in part due to a recent marriage and "going through the 'disability process.'" (Tr. at 430). But in August 2008 Plaintiff was oriented and had normal mood and affect. (Tr. at 347). In January 2010 Plaintiff reported being in good spirits. (Tr. at 310). She denied depression and crying. (Tr. at 310). In August 2012 Plaintiff reported "[s]ome

down days" but stated they did not last long. (Tr. at 412). In November 2012 Plaintiff reported no depression. (Tr. at 411).

Plaintiff's varied individual activities, not just those involving crowds, further bolster the ALJ's finding that she did not have a severe impairment before December 2013. Plaintiff told Dr. Griffith in December 2013 that she had lack of interest and low energy. (Tr. at 43, 432). But aside from reporting activities such as attending cosmetology school, applying for jobs, not only attending but speaking at anime conventions, and vacationing at Disneyworld, she also previously reported activities such as drawing for people in June 2010 (tr. at 41, 391); writing game reviews for a local website in January 2011 (tr. at 41, 388); having a website with her boyfriend and wanting to make "superhuman costumes" in January 2011 (tr. at 388); using a sewing machine to make costumes in November 2011 (tr. at 41, 385); weight training and swimming around May 2012 (tr. at 413); being busy with costuming and comic writing in August 2012 (tr. at 41, 412); making a lot of costumes in January 2013 (tr. at 410); and considering going to the University of Alabama-Birmingham for costume design in October 2013. (Tr. at 38, 427).

Aside from depression and anxiety, Plaintiff's physical examinations prior to December 2013 also revealed relatively normal findings. According to Ms. Marceau, on April 5, 2008, numb spots were appearing on her foot that caused her

foot to stop bearing weight, among other things. (Tr. at 94.) She also reported nerve spikes and numb spots where she would feel a sharp, sudden cold feeling run down her leg that felt like electricity and would cause her to jump. (Tr. at 100.) However, during an examination just two months later, in June 2008, her arms and legs appeared normal and she had full range of motion. (Tr. at 347). In October 2008, her gait was normal, motor tone was normal, and strength was only mildly decreased in her arms and legs. (Tr. at 342). During that examination Plaintiff denied muscle weakness or hand-grip difficulties. (Tr. at 343). In November 2008 Plaintiff's strength in her biceps, deltoids, grasp, and quadriceps appeared grossly within normal limits. (Tr. at 322).

The physical examinations that occurred after June 2009, when Plaintiff's insured status expired, were also largely normal. Dr. Emmanuel Odi performed a consultative examination in July 2010. (Tr. at 37, 359). He observed that Plaintiff had normal posture, normal gait (aside from a small loss of balance while turning), and only mildly decreased (4/5) grip strength, and normal (5/5) arm and leg strength. (Tr. at 37-38, 40, 360-61). An examination in January 2012—the same month Plaintiff applied for SSI—showed she had normal sensation, good strength, and good coordination. (Tr. at 404). An MRI of her brain was normal and an MRI of her thoracic spine showed only an "early degenerative osteophyte" with no

significant findings. (Tr. at 39, 407). In February 2012 Plaintiff's strength was "ok," and she had no focal atrophy. (Tr. at 416). In June 2013 Dr. Dallas M. Russell, a neurologist, performed a consultative examination, and he observed Plaintiff had normal gait and could heel-and-toe walk and squat and rise. (Tr. at 39, 419). Dr. Russell also observed Plaintiff had normal (5/5) strength in all muscle groups. (Tr. at 39, 419).

Lastly, Plaintiff appears to argue that the ALJ's decision that she had no severe impairments until December 2013 contradicts the Appeals Council's decision reversing the ALJ's earlier denial decision and that this Court should reverse and remand on that ground. This is not so. The Appeals Council ordered the ALJ to obtain additional evidence about Plaintiff's neuromuscular and mental impairments (tr. at 133) and continue with the sequential evaluation process "[i]f warranted." (Tr. at 134). The ALJ complied with the order by obtaining a neurological examination by Dr. Russell (tr. at 418-26) and a neuropsychological examination by Dr. Griffith. (Tr. at 430-38). The ALJ also continued the sequential evaluation process, determining Plaintiff had medically determinable impairments (in contrast with his earlier, vacated decision), that the impairments were not severe before December 19, 2013, and that Plaintiff was disabled beginning on that date.

## B. Failure to Develop the Record

The ALJ has a duty to develop a fair record. *Henry v. Comm'r of Soc. Sec.*, 802 F. 3d 1264, 1268 (11th Cir. 2015). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 42 U.S.C. § 423(d)(5). Further, Plaintiff was represented at the administrative level. As such, the ALJ did not have any sort of heightened duty to develop the record on Plaintiff's behalf. *See Leiter v. Comm'r of Soc. Sec.*, 377 F. App'x 944, 949 (11th Cir. 2010). Furthermore, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982). "Although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

Relying upon SSR 83-20, which describes the Social Security Administration's policy with regard to determining the onset date of a claimant's disability, Plaintiff argues that once the ALJ found Plaintiff disabled, he was

required to call upon a medical advisor to determine the onset date. Essentially, she takes issue with the ALJ's determination that she became disabled in December 2013 and argues that he should have determined that she became disabled earlier. The portion of SSR 83-20 that Plaintiff relies upon is as follows:

> **Precise Evidence Not Available--Need for Inferences**
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20, 1983 WL 31249, at *3.

Contrary to Plaintiff's argument, SSR 83-20 does not *require* an ALJ to obtain medical expert testimony, hence its use of "should" rather than "must." *Id*. The Social Security Administration has explained that this ruling allows an ALJ discretion whether to obtain an expert medical opinion about an impairment's onset date. Hearings, Appeals, and Litigation Law Manual I-2-5-34(2), 1994 WL 637370; Clarification of SSR 83-20 – Titles II and XVI: Onset of Disability (listing under the heading "When an ALJ May Obtain an ME Opinion (Discretionary)" the following: "An ALJ may need to obtain an ME opinion, either in testimony at a

hearing or in responses to written interrogatories, when the ALJ: Needs an expert medical opinion regarding the onset of an impairment."). Also, SSR 83-20 discusses the possibility of medical expert testimony when inferring that a disability began before "the date of the first recorded medical examination." 1983 WL 31249, at *3. Here, the ALJ determined Plaintiff's disability began after several medical examinations had been conducted, such as Dr. Odi's in June 2010 (tr. at 359) and Dr. Russell's in July 2013 (tr. at 419), so this portion of SSR 83-20 is not applicable. Plaintiff does not point to any authority interpreting SSR 83-20 in the way that she suggests.

In sum, the Court notes that weighing the evidence is the ALJ's duty, and this Court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Dyer*, 395 F.3d at 1210 (insertion in original). The ALJ determined that Plaintiff did not have a severe impairment until December 19, 2013. Substantial evidence, including Plaintiff's varied activities, numerous treatment notes, and several examinations, support this determination.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Marceau's arguments, the Court finds the Commissioner's decision is supported

by substantial evidence and in accord with the applicable law. A separate order will be entered.

DONE and ORDERED on September 7, 2017.

L. Scott Coogler
United States District Judge

160704